UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

John Doe,                                               Civil Action No.:

                 Plaintiff,

      -against-                                **COMPLAINT**

The American Musical and Dramatic Academy        <u>Jury Trial Demanded</u>
and Trustees of The American Musical and
Dramatic Academy.
                Defendants.
----------------------------------------------------------------X

      Plaintiff, John Doe, (hereinafter referred to as "Plaintiff") by his attorneys, The Aboushi

Law Firm, PLLC., as and for his Complaint, respectfully alleges as follows:

### <u>NATURE OF THIS ACTION</u>

1. Plaintiff seeks redress against Defendant The American Musical and Dramatic

   Academy and Trustees of The American Musical and Dramatic Academy (collectively,

   "Defendant AMDA") due to the actions, omissions, errors, and the flawed procedures,

   and/or negligence and overall failure to provide Plaintiff with an expected standard of

   due process, concerning the wrongful allegations of sexual misconduct made against

   John Doe, a male, and former student at Defendant AMDA when fellow AMDA

   student, Jane Doe, made the unfounded allegations.

2. John Doe has been greatly damaged by the suspension: John Doe's educational career

   has been put on hold; his academic future has been severely damaged; the monies spent

   on obtaining a college education at Defendant AMDA squandered; and his

   psychological and emotional health has been greatly compromised by the entire ordeal.

Thus, John Doe brings this action to obtain relief based on causes of action for, among other things, violations of Title IX of the Education Amendments of 1972 and state law.

## THE PARTIES

3. Plaintiff John Doe ("Plaintiff") is an African American male currently residing in the State of New Jersey. Plaintiff was a resident of New York during the events described herein. John Doe was a student at AMDA and resided on the AMDA campus in New York, New York.

4. Upon information and belief, Defendant AMDA is a non-profit education institution incorporated by the States of New York and California. AMDA is also an accredited institution of the National Association of Schools of Theater ("NAST").

## JURISDICTION AND VENUE

5. This Court has diversity and supplemental jurisdiction pursuant to 28 U.S.C. § 1331 and under 28 U.S.C. §1332 because: (i) John Doe and Defendant AMDA are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of costs and interest; and (ii) the state law claims are so closely related to the federal law claims as to form the same case or controversy under Article III of the U.S. Constitution.

6. This Court has personal jurisdiction over Defendant AMDA on the grounds that Defendant AMDA is conducting business within the State of New York.

7. Venue for this action properly lies in this district pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

8.   Plaintiff is a native of New Jersey. His father is a Chef and Culinary Teacher. His mother is a claims analyst with the Social Security Administration. In his junior year of High School, Plaintiff decided he wanted to be an actor and enter the field of Film and Television. He secured a seat in his High School's competitive drama class and engaged an agent. Soon after, Plaintiff secured roles in movies, music videos and fashions shows. In an effort to pursue his passion he applied to St. John's University ("SJU"), American Academy of Dramatic Arts ("AADA") and Defendant AMDA.

9.   Plaintiff was accepted to his top choice, Defendant AMDA. He found the program to be specialized and technical, the campus attractive and the potential to succeed unlimited.

10.  Plaintiff began his freshman year of college at AMDA in October of 2014. Upon admittance, Plaintiff received a copy of the AMDA Student Handbook that included the AMDA Code of Conduct.

11.  Jane Doe, a Caucasian female, and Plaintiff, an African American male, began AMDA in the Fall 2014 semester as freshman. Jane Doe and Plaintiff met in the hallway on the way to class via introduction by another African American male student, Richard Doe (hereinafter "Richard"). Thereafter, Jane Doe messaged Plaintiff via Facebook. Soon after, Jane Doe offered her number to Plaintiff and both students began communicating via text messages over the course of several weeks.

12.  Jane Doe pursued Plaintiff, flirted with him on multiple occasions and hung out with him prior to March 19, 2015. At one point Jane Doe told Plaintiff she was interested in having sex with "black men" and wanted to have a "three-some".  Jane Doe would sit on Plaintiff's lap, hug him and rub herself on his penis.

13.  On the night of March 19, 2015, Jane Doe invited Plaintiff and Richard to a social gathering at her friend's dorm room. At some point during the social gathering, Jane Doe invited Plaintiff and Richard to her dorm. On the night of March 19, 2015 into the early hours of March 20, 2015, John Doe, Richard and Jane Doe engaged in sexual activity.

14. On March 23, 2015, Jane Doe reported the sexual encounter as a sexual assault to AMDA's Director of Student Affairs and Campus Security. Upon said allegations, Defendant engaged counsel, Daryl Lapp, Esq. to investigate and report on the matter. At the conclusion of his investigation a Report of Investigation was produced ("Report").

15. In sum and substance, Jane Doe alleged that on March 19, 2015 she invited Plaintiff and Richard Doe to a get-together at a friend's dorm room. Jane Doe contends she ingested several glasses of wine and smoked marijuana and therefore she may or may not have been "intoxicated". Jane Doe then invited Plaintiff and Richard Doe to her dorm room.

16. Jane Doe alleged she engaged in oral and vaginal sex with Plaintiff. As Plaintiff and Jane Doe were engaged in consensual sex, Richard Doe left the room to retrieve a condom from his room. Upon his return, Plaintiff and Jane Doe ceased intercourse and Richard Doe began engaging in sex with Plaintiff. Jane Doe alleges Richard Doe attempted to penetrate her anally at which point she told him to stop. Richard Doe explained it was by mistake and immediately stopped once Jane Doe said to stop. At that point all sexual activity ceased. Jane Doe, Richard Doe and Plaintiff spoke for a few minutes then Plaintiff and Richard went home.

17. Throughout the Report, several witnesses contested Jane Doe's account of whether or not she smoked marijuana, drank several glasses of wine and was intoxicated. Furthermore, throughout the Report, Jane Doe admitted on multiple instances that she engaged in consensual sex with Plaintiff.

18. Plaintiff and Richard Doe were interviewed separately and were represented by separate counsel throughout this process. Jane Doe was confronted with the fact that video surveillance of her with Plaintiff and Richard Doe taking the elevator to her dorm did not show exhibiting signs of intoxication. Jane Doe agreed with Lapp's characterization of the video. Lapp then played audio recordings of conversations between Jane Doe, Plaintiff and Richard Doe, recorded by Richard Doe and Plaintiff after the sexual encounter and the following day.

19. In said recordings, Jane Doe admitted to engaging in consensual sexual intercourse with Plaintiff. Jane Doe explicitly made several statements contradicting her claim that she was raped that were transcribed from the recordings including:

    i. "It was just a lot to handle…Both of you guys at one time. I mean damn. Maybe another time, but at different times, you know what I mean."

    ii. "You all keep fighting over me, that's great."

    iii. Plaintiff: "Thursday- that was unplanned. We had no idea that was going to happen. We didn't come there for that." Jane Doe: "No and I believe that, and I know I'm like…I was probably coming onto you guys like…"

    iv. "It probably wasn't even good sex (laughing)." "No, I'm serious."

20. Defendant AMDA did not conduct a hearing upon a Report being issued and failed to provide Plaintiff the opportunity to confront witnesses and present his own. Instead, Defendant AMDA issued a decision outright based upon the Report alone.

21. Despite the fact that the evidence adduced during the investigation clearly failed to establish any evidence against Plaintiff and in support of Jane Doe's allegations, Defendants issued a letter ("Decision") concluding that Plaintiff violated school policy of Sexual Misconduct and Assault and Basic Rules of Conduct.

22. The same Decision was issued to Plaintiff and Richard Doe. The Decision addressed both Richard Doe and Plaintiff as "you" and "your" and stated in part:

"It is evident that your behavior, based upon the preponderance of the evidence, demonstrated an egregious level of irresponsibility and immaturity. This demonstrated by your inability to have used reasonable judgment (at multiple moments of opportunity) to avoid and/or refrain from the actions that led to the events in question. Furthermore, oral and vaginal penetration of [Jane Doe], accidental or otherwise, as acknowledged by you in your reports shows lack of responsibility and control regarding a partner's safety and wellbeing and caused [Jane Doe] harm on many levels.

Our findings also indicate that prior to [Richard Doe] leaving for the condom, reasonable consent was implied within the sexual activity. However, the activities within the encounter changed once [Richard Doe] retuned. The investigation committee took into consideration that penetration occurred at this time without having received clear consent from [Jane Doe] to do so. Clear Consent Could not be inferred for the activities in which you participated. You had the responsibility to stop and wait until another time to get clear consent before engaging in such activity; you did not. Therefore it has been

found that you have violated the Code of Conduct's policy of Sexual Misconduct and Assault"…

23. The Decision did not differentiate between the actions of Plaintiff and the actions of Richard Doe as it related to the sexual encounter that took place with Jane Doe.

24. The Decision did not raise issues at to Jane Doe's emotional issues and at no time was Jane Doe's alleged emotional issues thoroughly explored during the investigation. Defendant AMDA advised that Richard Doe and Plaintiff "had the responsibility to stop and wait until another time to get clear consent before engaging in such activity."

25. Defendant AMDA then contradictorily based its sanctioning of Plaintiff on its conclusion that "oral and vaginal penetration of [Jane Doe], accidental or otherwise, as acknowledged by you in your reports shows lack of responsibility and control regarding a partner's safety and wellbeing and caused [Jane Doe] harm on many levels."

26. Based upon the Decision issued by AMDA, it is clear the act of penetration was the subject of focus. In this circumstance Plaintiff as a male could only have done the act of oral and vaginal penetration and therefore Defendants' Decision to severely sanction Plaintiff upon that basis is selective and discriminatory.

27. Defendants concluded that both male students committed the same acts and as a result imposed the same punishment against Plaintiff and Richard Doe. Most imperative, Defendants admitted in their Decision issued on June 1, 2015, that the sexual encounter between Plaintiff and Jane Doe was consensual as it is stated in the Decision "Our findings also indicate that prior to [Richard Doe] leaving for the condom, reasonable consent was implied within the sexual activity". It is undisputed that prior to Richard

Doe leaving Jane Doe's dorm to retrieve a condom, Jane Doe engaged in sexual intercourse with Plaintiff.

28. Nonetheless, Defendants then imposed the following sanctions on Plaintiff and Richard Doe: suspension from AMDA campuses for two semesters with readmission conditioned upon proof of successful completion of sensitivity training program that includes sexual violence awareness and bystander-focused prevention and an essay explaining how Plaintiff recognized the serious level of immature and irresponsible decision making that occurred on March 19, 2015 and how his actions caused a perceived and potential threat to another person in the AMDA community and Plaintiff must also provide information and insight regarding how he has grown and matured and can assure that such irresponsibility will not happen again if readmitted to ADMA and readmission is not guaranteed and is at the discretion of AMDA administration. Plaintiff was further sanctioned by expulsion from the AMDA residence halls and if readmitted Plaintiff must make living arrangements off campus.

29. Plaintiff immediately appealed Defendants' Decision which was discriminatory and/or arbitrary and capricious and given the evidence (or lack thereof) and AMDA's own admission that Plaintiff did not sexually assault Jane Doe and but for Plaintiff being a male, a conclusion of sexual misconduct could not have been reached and suspension ordered.

30. In response to Plaintiff's appeal, Defendants overturned their decision and found insufficient evidence to support a finding that Plaintiff violated the Sexual Misconduct and Assault Policy ("Appellate Decision"). Defendants further overturned Plaintiff's

expulsion from AMDA residence halls but affirmed the remaining sanctions against Plaintiff that remained imposed against Richard Doe.

31. In its Appellate Decision, AMDA created an entirely new basis for its conclusions- namely: "The evidence was sufficient to support a finding that [John Doe] more likely than not engaged in conduct that violates the basic Rules of Conduct…[John Doe] admittedly engaged in conduct, specifically a "three-some" which you described in your own words as "extreme-shit" with a student whom you knew to have a history of significant emotional issues and whom you knew had been drinking and smoking marijuana. Thus, although the preponderance of the evidence is that all of the sexual activity between you and the other student was consensual, the evidence supports a finding that your behavior was not "responsible and mature" and that it posed a "perceived or potential threat" to the other student's health, safety or security. Accordingly, the Committee's finding that you violated the Basic Rules of Conduct is sustained"

32. The Decision focused on whether or not there was consent whereas the Appellate Decision focused on Jane Doe's alleged emotional issues and whether or not she was smoking and drinking. Whether or not Jane Doe was smoking or drinking is moot because it has already been concluded that Jane Doe consented to the sexual intercourse. However, Jane Doe's alleged emotional issues were not relied upon as a basis for the Decision, therefore, Plaintiff was not given proper notice of the evidence concluded against him. Therefore, Plaintiff could not have appealed a basis that did not exist in the Decision.

33. At no time were Jane Doe's alleged emotional issues a subject of investigation in the Report. Defendant AMDA did not base its Decision on Jane Doe's alleged emotional issues or upon Jane Doe's alleged drinking and smoking marijuana. Defendant AMDA did not afford Plaintiff the opportunity to explore Jane Doe's alleged emotional issues and instead relies upon said bald allegation. Defendant AMDA failed to hold a hearing to explore the truth and veracity of Jane Doe's allegations and Plaintiff's defense thereof.

34. Defendant AMDA concluded that Jane Doe consented to the sexual intercourse with Plaintiff but then contradicts its finding by raising the allegation that Jane Doe was drinking and smoking marijuana when the intercourse occurred- allegations that were not supported by evidenced contained in the Report. Thus Defendant AMDA's expulsion of Plaintiff was erroneous.

35. Moreover, in its Decision, Defendant AMDA gave an example of a student's responsibility- "to stop and wait until another time to get clear consent before engaging in such activity". Based upon both the Decision and Appellate Decision's finding that Plaintiff did have Jane Doe's consent prior to engaging in sexual intercourse with her, it is clear Plaintiff did act responsibly. Yet, in the Appellate Decision, Defendant AMDA concludes that Plaintiff's behavior was not "responsible and mature". Based upon the foregoing, it is clear that the AMDA disciplinary panel arbitrarily or capriciously dismissed Plaintiff.

36. Defendant AMDA's Code of Conduct states the Basic Rules of Conduct as follows:

> AMDA students are expected to conduct themselves as responsible and mature members of both the AMDA community and the general community.

*Behaviors that pose a perceived or potential threat to the health, safety or security of the AMDA community (or any individual within the AMDA community) and behaviors that disrupt educational activities or artistic pursuits are subject to review and possible sanctions, including dismissal from school. AMDA reserves the right to modify or change the Code of Conduct at any time.*

37. AMDA further defines discrimination as:

*Any decision, act, or failure to act that improperly interferes with or limits a person's or group's ability to participate in or benefit from the services, privileges, or activities of the college, or otherwise adversely affects a person's employment, education, or living environment when such decision, act, or failure to act is based on race, color, religion, national origin, ethnic origin, ancestry, citizenship, sex (including pregnancy, childbirth, or related medical conditions), sexual orientation, gender (including gender identity and expression), marital status, age, physical or mental disability, medical condition, genetic characteristics, veteran status, or any other characteristic protected by applicable law (or based on a perception that an individual has such characteristics or associates with others who have, or are perceived to have, such characteristics).*

38. Although AMDA claims a "three-some occurred" it is clear that Plaintiff did not engage in a three-some with Jane Doe and Richard. Plaintiff and Jane Doe engaged in intercourse at a time separate than that of Jane Doe and Richard Doe. Furthermore,

Defendants have no evidence whatsoever to support their assumption that Plaintiff had actual knowledge that Jane Doe had emotional issues and to what extent she alleged suffering from emotional issues.

39. Moreover, throughout Defendants' Report, there is no evidence that Jane Doe was intoxicated or that she smoked marijuana. Although in the Report, Jane Doe states she ingested alcohol and marijuana, several accounts from witnesses interviewed were to the contrary with one student vehemently denying that marijuana was present in the room. Other witnesses, who introduced themselves as friends of Jane Doe, stated that Jane Doe was not intoxicated, did not smoke marijuana and did not drink an excessive amount of wine on March 19, 2015.

40. In the face of such overwhelming evidence to the contrary, Defendants erroneously imposed severe and egregious sanctions upon Plaintiff. Defendants imposed the same sanctions against Richard Doe. Therefore it is clear that AMDA's imposition of university discipline was not only motivated by Plaintiff's gender but was based upon Plaintiff's gender.

41. Defendants refused to take action against Jane Doe whose education was not disturbed, as she remains a student at AMDA although her allegation of rape was determined to be unfounded and instead it was concluded she consented to sexual intercourse with Plaintiff.

42. Moreover, Defendants protected Jane Doe from responsibility and liability for using Plaintiff to realize her fantasy of having sexual intercourse with black men.

43. It is clear Jane Doe pursued Plaintiff because of his gender and race in that she admits that she "may have told Plaintiff she never had sex with a black guy". Jane Doe pursued

Plaintiff sexually for several weeks including, as she has admitted and interviewed witnesses confirmed, coming on to him by rubbing on his penis and sitting on his lap.

44. As a result of Defendant AMDA's actions, Plaintiff's entire academic career is ruined and, without a college education, his overall economic future is completely compromised.

45. Currently, John Doe's education is at a standstill as a result of Defendant's severe and egregious sanctions in that Plaintiff is scrambling to find a replacement college, has missed several deadlines to apply to comparable colleges, register for classes and secure internships in his field.

46. Even though Plaintiff may be allowed to return to Defendant AMDA in the future, his academic and disciplinary record is irrevocably and irreversibly tarnished and will not withstand scrutiny by any transfer to another educational institution, including graduate studies.

47. Moreover, Defendant AMDA has conditioned Plaintiff's re-application to its institution upon a coerced and false confession and a series of "trainings" and "programs" to rehabilitate Plaintiff from sexual violence awareness and by-stander prevention when Plaintiff has not been found to have committed either act.

48. As a result of Defendant AMDA's actions, John Doe's parents' financial resources used to provide John Doe with a specialized education have been squandered.

49. As a result of Defendant AMDA's actions, John Doe suffered and continues to suffer emotional and psychological damages.

50. John Doe seeks redress from this Court to undo the wrongs occasioned by Defendants on his education and future.

## AS AND FOR THE FIRST CAUSE OF ACTION
### Violation of Title IX of the Education Amendments of 1972

51. John Doe repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

52. Title IX of the Education Amendments of 1972 provides, in relevant part, that: No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

53. Title IX of the Education Amendments of 1972 applies to an entire school or institution if any part of that school receives federal funds; hence, athletic programs are subject to Title IX of the Education Amendments of 1972, even though there is very little direct federal funding of school sports.

54. Upon information and belief, Defendant AMDA receives federal funding.

55. Both the Department of Education and the Department of Justice have promulgated regulations under Title IX that require a school to "adopt and publish grievance procedures providing for the prompt and equitable resolution of student... complaints alleging any action which would be prohibited by" Title IX or regulations thereunder. 34 C.F.R. § 106.8(b) (Dep't of Education); 28 C.F.R. § 54.135(b) (Dep't of Justice) (emphasis added). Such prohibited actions include all forms of sexual harassment, including sexual intercourse, sexual assault, and rape.

56. The procedures adopted by a school covered by Title IX must not only "ensure the Title IX rights of the complainant," but must also *accord due process to both parties involved..."*

57. The "prompt and equitable" procedures that a school must implement to "accord due process to both parties involved" must include, at a minimum:

    a.   "Notice ... of the procedure, including where complaints may be filed";

    b.   "Application of the procedure to complaints alleging [sexual] harassment...";

    c.   "Adequate, reliable, and impartial investigation of complaints, including the opportunity to present witnesses and other evidence";

    d.   "Designated and reasonably prompt timeframes for the major stages of the complaint process"; and

    e.   "Notice to the parties of the outcome of the complaint..."

58. A school also has an obligation under Title IX to make sure that all employees involved in the conduct of the procedures have "adequate training as to what conduct constitutes sexual harassment, which includes "alleged sexual assaults."

59. Defendant AMDA failed to clearly state what the charges were against Plaintiff and failed to hold a hearing to give Plaintiff an opportunity to present witnesses and other evidence. Plaintiff did not have an opportunity to present witnesses in support of his defense. Defendant AMDA's Appellate Decision considered allegations not present in the Decision in that Jane Doe's emotional issues were not a factor for rendering said Decision.

60. Based on the foregoing, Defendant AMDA has deprived John Doe, on the basis of his sex, of his rights to due process and equal protection through the improper administration of and/or the existence, in its current state, of Defendant AMDA's guidelines and regulations.

61. Based on the foregoing, Defendant AMDA conducted its investigation of the Evening of March 19th-March 20th, in a manner that was biased against the male being accused from the outset in that AMDA found Plaintiff in violation of "Sexual Misconduct" and thereafter overturned its own decision but still sustained sanctions as if Plaintiff was still in violation.

62. Moreover, having found the sexual intercourse to be consensual, Jane Doe was not sanctioned for her behavior and was not found to be in violation of the Basic Code of Conduct. Lastly, Defendants failed to provide a basis or rationale for reaching it's conclusion that Plaintiff violated the basic code of conduct and instead lumped Plaintiff into Richard Doe's actions.

63. Based on the foregoing, Defendant AMDA imposed sanctions on John Doe that were disproportionate to the severity of the charges levied against him and without any consideration of the false allegations made by Jane Doe and his clean disciplinary record at AMDA.

64. Based on the foregoing, Defendant AMDA imposed sanctions on John Doe without any consideration and regard for Jane Doe's malicious intent to victimize Plaintiff in pursuit of her sexual fantasy that was only briefly addressed in the Report.

65. Based on the foregoing, Defendant AMDA's guidelines and regulations are set up to disproportionately affect the male student population of the AMDA community.

66. Based on the foregoing, male respondents in sexual misconduct cases at AMDA are discriminated against solely on the basis of sex. They are invariably found guilty, regardless of the evidence, or lack thereof.

67. As a result of the foregoing, John Doe is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR THE SECOND CAUSE OF ACTION
### Breach of Contract

68. John Doe repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

69. Based on the aforementioned facts and circumstances, Defendant AMDA breached an express and/or implied agreement(s) with John Doe.

70. As a direct and foreseeable consequence of these breaches, John Doe sustained tremendous damages, including, without limitation, emotional distress, loss of educational and athletic opportunities, economic injuries and other direct and consequential damages.

71. John Doe is entitled to recover damages for Defendant AMDA's breach of the express and/or implied contractual obligations described above.

72. As a direct and proximate result of the above conduct, actions and inactions, John Doe has suffered physical, psychological, emotional and reputational damages, economic injuries and the loss of educational and athletic opportunities.

73. As a result of the foregoing, John Doe is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR THE THIRD CAUSE OF ACTION
### Covenant of Good Faith and Fair Dealing

74. John Doe repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

75. Based on the aforementioned facts and circumstances, Defendant AMDA breached and violated a covenant of good faith and fair dealing implied in the agreement(s) with John Doe by meting out a disproportionate sanction of a nearly two-year suspension against John Doe, notwithstanding the lack of evidence in support of Jane Doe's claim of sexual assault and, in the face of AMDA's own overturning of the finding that Plaintiff was in violation of sexual misconduct.

76. As a direct and foreseeable consequence of these breaches, John Doe sustained tremendous damages, including, without limitation, emotional distress, psychological damages, loss of educational and athletic opportunities, economic injuries and other direct and consequential damages.

77. John Doe is entitled to recover damages for Defendant AMDA's breach of the express and/or implied contractual obligations described above.

78. As a result of the foregoing, John Doe is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR THE FOURTH CAUSE OF ACTION
### Unfair or Deceptive Trade Practices

79. John Doe repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

80. Section 349(a) of the General Business Law provides consumer protection by declaring as unlawful "deceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state".

81. AMDA's Student Policies and Procedures on Discrimination and Harassment state, among other things:

> *Any decision, act, or failure to act that improperly interferes with or limits a person's or group's ability to participate in or benefit from the services, privileges, or activities of the college, or otherwise adversely affects a person's employment, education, or living environment when such decision, act, or failure to act is based on race, color, religion, national origin, ethnic origin, ancestry, citizenship, sex (including pregnancy, childbirth, or related medical conditions), sexual orientation, gender...*

82. Defendant AMDA has engaged in the following acts or practices that are deceptive or misleading in a material way, or committed deceptive acts or practices, which were aimed at the consumer public at large, that were a representation or omission likely to mislead a reasonable consumer acting reasonably under the circumstances:

   a. by causing John Doe to believe that Defendant AMDA would follow its policies, copies of which were provided to John Doe and are also available on Defendant AMDA's Internet website; and

   b. by causing John Doe to believe that if he paid tuition and fees to Defendant AMDA, that Defendant AMDA would uphold its obligations, covenants and warranties to John Doe described in its policies.

83. Based on the foregoing facts and circumstances, Defendant AMDA engaged in unfair or deceptive trade practices in violation of Section 349(a) of the General Business Law.

84. As a result of Defendant AMDA's deceptive acts and practices, John Doe sustained tremendous damages, including, without limitation, emotional distress, psychological damages, loss of educational and athletic opportunities, economic injuries and other direct and consequential damages.

85. As a result of the foregoing, John Doe is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

**AS AND FOR THE FIFTH CAUSE OF ACTION**
**Estoppel and Reliance**

86. John Doe repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

87. Defendant AMDA's various policies constitute representations and promises that Defendant AMDA should have reasonably expected to induce action or forbearance by John Doe.

88. Defendant AMDA expected or should have expected John Doe to accept its offer of admission, incur tuition and fees expenses, and choose not to attend other colleges based on its express and implied promises that Defendant AMDA would not tolerate, and John Doe would not suffer, harassment by fellow students and would not deny John Doe his procedural rights should he be accused of a violation of AMDA Gender-Based Misconduct Policies.

89. John Doe relied to his detriment on these express and implied promises and representations made by Defendant AMDA in that he declined offers of acceptance by other colleges and universities in attending AMDA.

90. Based on the foregoing, Defendant AMDA is liable to John Doe based on Estoppel.

91. As a direct and proximate result of the above conduct, John Doe sustained tremendous damages, including, without limitation, emotional distress, psychological damages, loss of educational and athletic opportunities, economic injuries and other direct and consequential damages.

92. As a result of the foregoing, John Doe is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

**AS AND FOR THE SIXTH CAUSE OF ACTION**
**Intentional Infliction of Emotional Distress**

93. John Doe repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

94. Based on the foregoing facts and circumstances, Defendant AMDA intentionally and/or with willful or wanton indifference to the truth, engaged in conduct to suspend John Doe from AMDA without regard to the truth of the allegations being made by Jane Doe and without evidence in support of Jane Doe's clearly false claims, and otherwise intentionally inflicted emotional distress upon John Doe.

95. The above actions and inactions by Defendant AMDA were so outrageous and utterly intolerable that they caused mental anguish and severe psychological and emotional distress to John Doe, as well as physical harm, financial loss, humiliation, loss of reputation and other damages.

96. As a direct and proximate result of the above conduct, John Doe sustained tremendous damages, including, without limitation, emotional distress, loss of educational and athletic opportunities, economic injuries and other direct and consequential damages.

97. As a result of the foregoing, John Doe is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

### AS AND FOR THE SEVENTH CAUSE OF ACTION
### Negligence

98. John Doe repeats and re-alleges each and every allegation hereinabove as if fully set forth herein.

99. Defendant AMDA owed duties of care to John Doe. Such duties included, without limitation, a duty of reasonable care in the conduct and investigation of the allegations of rape and sexual misconduct against him.

100. Defendant AMDA breached its duties owed to John Doe.

101. As a direct and proximate result of the above conduct, John Doe sustained tremendous damages, including, without limitation, emotional distress, psychological damages, loss of educational and athletic opportunities, economic injuries and other direct and consequential damages.

102. As a result of the foregoing, John Doe is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## AS AND FOR THE EIGHTH CAUSE OF ACTION
### Declaratory Judgment

103.    John Doe repeats and re-alleges each and every allegation hereinabove as if fully set

forth herein.

104.    Defendant AMDA has committed numerous violations of the Parties' contracts and of

federal and state law.

105.    John Doe's education and future career has been severely damaged. Without

appropriate redress, the unfair outcome of the Decision will continue to cause irreversible

damages to John Doe's educational career and future employment prospects, with no end in

sight.

106.    As a result of the foregoing, there exists a justiciable controversy between the Parties

with respect to the outcome, permanency, and future handling of John Doe's formal student

record at AMDA.

107.    By reason of the foregoing, John Doe requests, pursuant to 28 U.S.C. § 2201, a

declaration that: (i) the outcome and findings made by AMDA be reversed; (ii) John Doe's

reputation be restored; (iii) John Doe's disciplinary record be expunged; (iv) the record of

John Doe's expulsion from AMDA be removed from his education file; (v) any record of

John Doe's investigation and findings therefrom be permanently destroyed; and (vi)

AMDA's rules, regulations and guidelines are unconstitutional as applied.


### PRAYER FOR RELIEF

**WHEREFORE,** for the foregoing reasons, John Doe demands judgment against Defendant

AMDA as follows:

i.    On the first cause of action for violation of Title IX of the Education Amendments of 1972, a judgment awarding John Doe damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and athletic opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

ii.   On the second cause of action for breach of contract, a judgment awarding John Doe damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and athletic opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

iii.  On the third cause of action for breach of the covenant of good faith and fair dealing, a judgment awarding John Doe damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and athletic opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

iv.   On the fourth cause of action under Section 349(a) of the General Business Law, a judgment awarding John Doe damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and

24

athletic opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

v.      On the fifth cause of action for estoppel and reliance, a judgment awarding John Doe damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and athletic opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

vi.     On the sixth cause of action for intentional infliction of emotional distress, a judgment awarding John Doe damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and athletic opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

vii.    On the seventh cause of action for negligence, a judgment awarding John Doe damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and athletic opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

viii.   On the eighth cause of action for a declaratory judgment pursuant to 28 U.S.C. § 2201, a judicial declaration that: (i) the outcome and findings made by AMDA be reversed; (ii) John Doe's reputation be restored; (iii) John Doe's disciplinary record be expunged; (iv) the record of John Doe's expulsion from AMDA be removed from his education file; (v)

any record of John Doe's investigation be permanently destroyed; and (vi) AMDA 's

rules, regulations and guidelines are unconstitutional as applied; and

ix.    Awarding John Doe such other and further relief as the Court deems just, equitable and

proper.


Dated: New York, New York
       November 16, 2015

                                        The Aboushi Law Firm, PLLC
                                        By: /s/Tahanie A. Aboushi
                                             (TA 6529)
                                        *Attorneys for Plaintiff*
                                        1441 Broadway, Suite 5036
                                        New York, New York 10018
                                        Telephone (212) 391-8500
                                        Facsimile (212) 391-8508
                                        www.Aboushi.com